UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE LA LUZ ROMERO REBOLLEDO, | No. 1:25-cv-1904 CKD P |
| Petitioner, | |
| v. | ORDER GRANTING HABEAS CORPUS PETITION AND FOR IMMEDIATE RELEASE |
| CHRISTOPHER CHESTNUT, Warden, California City Detention Facility, | |
| Respondent. | |

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). ECF No. 12. For the reasons which follow, the court grants the petition and orders petitioner's immediate release.

I. Proper Respondent

The proper respondent with respect to a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 is the person having custody over the petitioner. 28 U.S.C. § 2242. Because petitioner is currently detained at the California City Detention Facility, the Warden, Christopher Chestnut, is the proper respondent. The other respondents named by petitioner will be dismissed.

/////

1

II. Petitioner's Allegations

In her habeas petition (ECF No. 2), petitioner alleges as follows:

1. Petitioner is a native and citizen of Mexico. She entered the United States on March 4, 2019, through the San Ysidro port of entry seeking asylum.[1] When she arrived federal agents briefly detained her, determined that she was not a flight risk or danger to the community, and released her on her own recognizance with a notice to appear for removal proceedings in immigration court.

2. Petitioner has lived in Porterville for four years. She has two children and a fiancé who works in a factory.

3. On November 25, 2024, petitioner filed an application for asylum which is still under consideration.

4. In October, 2025, an Intensive Supervision Appearance Program (ISAP) agent called her from a Colorado number which petitioner thought was a spam call. ISAP immediately called her again from the Bakersfield number and petitioner answered.  The ISAP agent informed petitioner that because she missed the first ISAP phone call she had to present herself on October 14, 2025.  When she appeared she was arrested and she has remained in detention ever since.

5. Petitioner does not have an order of deportation.

6. Petitioner has no criminal history. Since her release into the United States petitioner has attended every ICE and United States Citizenship and Immigration Services ("USCIS") appointment and check-in. She has complied with all conditions of release.

Respondent does not contest any of petitioner's allegations.

/////

/////

_____

[1] In her motion for a temporary restraining order, petitioner asserted she entered the United States without inspection, ECF No. 3 at 3, suggesting she did not enter though a port of entry and was arrested after being located by border enforcement officers.  Whether petitioner entered with or without inspection would be material if petitioner presented a claim for relief based upon statutory law.  Since she does not, whether she entered with or without inspection makes no difference.

III.  Standard for Habeas Relief.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

IV.  Violation of Fifth Amendment

Petitioner contends that her being arrested and detained without a determination that she is flight risk or danger to the community at a "bond" hearing, violates her Fifth Amendment right to not have her liberty taken away without due process.[2] Generally speaking, the Due Process Clause applies to all persons within the "geographic borders" of the United States. Id. at 693. "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." Plyler v. Doe, 457 U.S. 202, 210 (1982). Due process protection applies to aliens who have "passed through our gates." Shaughnessy v. U.S., 345 U.S. 206, 212 (1953). Even in the immigration context, government detention is permissible "only 'in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Kong v. United States, 62 F.4th 608, 616 (1st Cir. 2023) (quoting Zadvydas, 533 U.S. at 690).

/////

---

[2] Petitioner also argues that being arrested and detained violates the Fourth Amendment. Because the court finds petitioner is entitled to the relief she seeks for a violation of the Fifth Amendment, the court need not address the Fourth Amendment claim.

3

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [v. Brewer, 408 U.S. 471 (1972)]." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, the parolee's "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in "continued liberty." Id. at 481-84.

The regulations authorizing ICE to release a noncitizen from custody into the United States require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

Considering the forgoing, the court finds that, generally speaking, petitioner's prior release created a reasonable expectation that she would be entitled to retain her liberty as long as she was not a flight risk and was not dangerous. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). "[E]ven when ICE has the initial discretion

4

to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

The Court turns next to the procedures that are necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For approximately six and a half years, petitioner was free from custody with her children before re-detention. The duration of her conditional release elevates and underscores her interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 10125, 1033 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother

5

and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 1:25-cv-0197 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. Even if petitioner failed to properly answer ICE's call on one occasion as suggested, that violation of her terms of release warrant a pre-detention hearing rather than automatic detention; a minimal violation does not suggest dangerousness or flight risk in any respect. "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Id.

Indeed, in criminal cases parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V. v. Wofford, 1:25-cv-2381 KES SAB, 2025 WL 3083934 at *6 (E.D. Cal. Nov. 4, 2025) (collecting cases). Respondent points to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," so that "a pre-deprivation hearing is required to satisfy due

6

process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

In sum, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before she was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).

Accordingly, IT IS HEREBY ORDERED that:

1.  All respondents other than Christopher Chestnut, in his capacity as Warden of the California City Detention Facility, are dismissed.

2. The petition for writ of habeas corpus (ECF No. 1) is GRANTED.

3. Respondent is ordered to RELEASE PETITIONER IMMEDIATELY and respondent and the Immigration and Customs Enforcement Agency are enjoined and restrained from re-detaining petitioner unless petitioner is provided with (1) written notice before a pre-deprivation bond hearing and (2) it is demonstrated, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

4.  This case is closed.

Dated:  January 28, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
rome1904.mer(1)

7